United States District Court
Middle District of Florida
Jacksonville Division

**KATHLEEN J. DAVIS,**

    *Plaintiff,*

v.                                                                                                                                **NO. 3:20-cv-901-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

___

# Order

    Kathleen Davis brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to challenge a final decision by the Acting Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income benefits. Doc. 1. The final decision is a decision by an administrative law judge (ALJ) signed on December 26, 2019. Tr. 67–81. The procedural history, record evidence, and law are summarized in the ALJ's decision, Tr. 67–81, and the parties' briefs, Docs. 22, 25, and not fully repeated here.

## I.    Background

    Davis was born in 1973. Tr. 328. She worked intermittently until June 6, 2014. Tr. 362, 374. Her date last insured is December 31, 2018. Tr. 68. She applied for benefits in August 2018, alleging her disability had begun in June 2014. Tr. 328–38. Because a previous ALJ had adjudicated her not disabled through July 26, 2017, only the period after that day was at issue. Tr. 67–68.

She proceeded through the administrative process, failing at each level. Tr. 1, 67, 68. This action followed. Doc. 1.

## II.  ALJ's Decision

The ALJ conducted a hearing on September 24, 2019, at which Davis and a vocational expert testified. Tr. 87–115. Afterward, the ALJ issued the decision under review, proceeding through the five-step sequential process in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ found Davis has not engaged in "substantial gainful activity" since July 27, 2017. Tr. 70.

At step two, the ALJ found Davis has severe impairments of asymptomatic HIV, migraines, obesity, spinal disorders, right-shoulder impingement, essential hypertension, chronic kidney disease, anemia, trauma- and stress-related disorders, schizophrenia-spectrum disorder and other psychotic disorders, and depressive, bipolar, and related disorders. Tr. 70.

At step three, the ALJ found Davis's impairments individually or combined fail to meet or equal the severity of anything in the regulatory listings. Tr. 70.

The ALJ found Davis has the residual functional capacity (RFC) to perform sedentary work, Tr. 72–73, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. §§ 404.1567(a), 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other

2

sedentary criteria are met." *Id.* The ALJ found Davis can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and occasionally tolerate exposure to unprotected heights, moving mechanical parts, dust, odors, fumes, and pulmonary irritants. Tr. 72–73. The ALJ found Davis can tolerate only moderate noise. Tr. 73. The ALJ found Davis is limited to simple, routine tasks and decisions, must have limited interaction with the public, and must have few changes in her work setting. Tr. 73. And the ALJ found that, along with normal breaks, Davis will be off task about five minutes an hour. Tr. 73.

At step four, the ALJ found Davis is unable to perform her past relevant work. Tr. 79.

At step five, the ALJ found Davis can perform jobs of document preparer, addresser, and cutter and paster, and the jobs exist in significant numbers in the national economy. Tr. 80–81.

The ALJ thus found Davis is not disabled. Tr. 81.

### III. Evidence

The administrative transcript includes medical records, Tr. 459–1101, and responses to pain and HIV questionnaires, Tr. 380–82, 400–03, 412–18, 427–29.

Medical records from the Alachua Health Department show physical examinations were generally normal. Tr. 497–98, 506–07, 516–17, 528–29, 533–34. Davis frequently reported experiencing no pain, Tr. 495, 524, 533, with occasional low or moderate pain, Tr. 504, 513. She consistently had full range of motion and full muscle strength in all extremities. Tr. 500, 509, 530, 535.

3

She reported a migraine once, Tr. 517, but otherwise had no headaches, Tr. 495, 507, 529, 534. She had asymptomatic HIV. Tr. 500, 509, 520, 531, 536. She consistently had no depression, Tr. 498, 505, 514, 516, 529, 534, and her mood and affect were consistently appropriate, Tr. 500, 509, 519, 530, 535.

Medical records from University of Florida Health show Davis reported 12 to 16 headaches a month, which improved with medication. Tr. 577, 578, 618, 621, 635, 654, 666. She was offered additional medication and Botox in July 2018, Tr. 582, but the records do not show she pursued these options. She was diagnosed with impingement syndrome of the right shoulder. Tr. 577. She progressed appropriately toward physical-therapy goals, physical therapy decreased her pain, and she improved enough to be discharged from physical therapy. Tr. 584, 586, 588, 590, 592, 593, 595, 597, 603, 604, 606, 608, 609, 611, 613, 614. She underwent a hysterectomy to treat abnormal uterine bleeding, and no postoperative pain, bleeding, or discharge was present. Tr. 634, 638, 647. She continued on an iron supplement to treat anemia. Tr. 630. She reported hallucinations and depression. Tr. 578, 582, 615, 618, 621, 631, 635.

Medical records from Meridian Behavioral Healthcare show Davis has a history of trauma. Tr. 779. She reported hallucinations and symptoms of depression. Tr. 774, 776, 779. She was stable on medication, Tr. 775, and her symptoms and hallucinations stopped with additional medication, Tr. 788, 790–91. Her provider recommended outpatient treatment. Tr. 779.

At the hearing, Davis testified as follows. She suffers migraines at least 12 to 14 times a month, they sometimes last more than two hours, and they cause her to curl up and cry. Tr. 94. She was diagnosed with impingement of the right shoulder, and her shoulder goes numb and causes pain, which goes up her neck. Tr. 94–95, 104. Her wrists and hands swell and cramp, causing

4

shakes and preventing her from lifting. Tr. 95. She has vaginal pain and had to undergo a hysterectomy after excessive bleeding. Tr. 96. She has HIV, which is under control, and herpes. Tr. 94, 103. She has kidney trouble. 103–04. She has schizophrenia and hears voices three or four times a week. Tr. 96. She has depression. Tr. 96. She takes 22 medications, and the side effects include drowsiness, inability to handle machinery, nerves, and fluctuating weight. Tr. 96. Some of her medications prevent her from driving, but she drove to the hearing, albeit with her mother-in-law because she was scared to drive alone. Tr. 96–97. Her husband and daughter help her bathe, and she needs help fastening her bra but can otherwise dress herself. Tr. 97. She can do very little around the house, and her husband helps with chores. Tr. 97.

At the hearing, the vocational expert opined a hypothetical person with the limitations assessed in the RFC would be able to perform jobs such as document preparer, addresser, and cutter and paster, and these jobs exist in significant numbers in the national economy. Tr. 108–12. When the ALJ added a limitation of being off task 20 percent of the time, the vocational expert opined the hypothetical person would be unable to find competitive employment. Tr. 112.

## IV.   Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. §§ 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

A court must affirm a decision supported by substantial evidence even when other evidence preponderates against the factual findings. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V.   Law & Analysis

Davis's arguments concern the ALJ's RFC finding. Doc. 25 at 13–25.

A claimant's RFC is the most she can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To assess the RFC, an ALJ must consider all medically determinable impairments. *Id.* at §§ 404.1545(a)(2) & (e), 416.945(a)(2) & (e). But the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work. *Moore*, 405 F.3d at 1213 n.6.

Davis argues the ALJ failed to properly consider her right-shoulder impingement and carpal tunnel syndrome because the RFC assessment includes no limitations on reaching, handling, or fingering. Doc. 22 at 13. Davis argues, "Properly considered, [her] severe impairments would lead to a much more limited [RFC.]" Doc. 22 at 15.

In assessing the RFC, the ALJ discussed the evidence of record, including Davis's medical history and hearing testimony. *See* Tr. 73–79. The ALJ acknowledged Davis "testified that she has swelling and cramping in her hands and wrists causing difficulty lifting," Tr. 73, and explained that because

6

Davis "has some functional limitations related to her musculoskeletal impairments," he limited her to "sedentary work with additional postural and environmental restrictions … to account for any symptoms and limitations, as established by the medical record," Tr. 76. The limitations to sedentary work (lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools); only occasional climbing of ramps and stairs; and no climbing of ladders, ropes, or scaffolds, *see* Tr. 72, sufficiently account for the limiting effects of her spine disorder, right-shoulder impingement, and carpal tunnel syndrome. Musculoskeletal examinations were generally normal. Tr. 497–98, 506–07, 516–17, 528–29, 533–34. Medical records show Davis had shoulder and back pain only sometimes, and the pain improved with physical therapy. Tr. 525, 533, 583–84, 614. She consistently had full range of motion and full muscle strength in all extremities. Tr. 500, 509, 530, 535. *See* Tr. 74–76 (ALJ's discussion of the evidence). She was diagnosed with carpal tunnel syndrome in September 2016, Tr. 563, 566, but the record contains no mention of the impairment during the relevant period. Simply being diagnosed with carpal tunnel syndrome does not translate into limitations that should be included in the RFC. *See Moore*, 405 F.3d at 1213 n.6. Further, and notably, Davis points to no evidence showing her right-shoulder impingement and carpal tunnel syndrome cause limitations greater than those in the RFC. To the extent she has difficulty lifting because of the swelling and cramping in her hands and wrists, Tr. 95, the RFC's limitation to sedentary work adequately accounts for this. The ALJ's decision to omit limitations on reaching, handling, and fingering is thus supported by substantial evidence.[*]

---

[*] Davis summarily asserts the ALJ "refused to assign restrictions due to unidentified inconsistencies in the testimony from Plaintiff and the medical evidence." Doc. 22 at 24. To

7

Davis argues the ALJ's failure to find she would be off task for more than five minutes an hour "defies logic." Doc. 22 at 21. She fails to explain how. The ALJ found she would be off task for five minutes an hour "in an abundance of caution," Tr. 78, and this finding is supported by substantial evidence: generally normal medical examinations, Tr. 497–98, 506–07, 516–17, 528–29, 533–34; Davis's consistently appropriate mood and affect during appointments, Tr. 500, 509, 519, 530, 535; the successful treatment of her bleeding and hallucinations, Tr. 630, 788, 790–91; and medical reports over several months indicating that she consistently had no pain, no headache, and no depression, Tr. 495, 498, 505, 507, 514, 524, 529, 533, 534.

Davis argues, "In failing to adequately address [Davis's] need for breaks and absences from work, the ALJ fails to explain why he disregarded 1.) [Davis's] testimony … that she experiences 12-14 migraines per month, lasting 2 hours each, 2.) the effects of her severe impairment of anemia caused by excessive bleeding, or 3.) her affective disorders including psychotic auditory hallucinations[.]" Doc. 22 at 21. But the ALJ did not disregard these pieces of evidence; he addressed each in his analysis.

Regarding Davis's testimony about migraines, the ALJ limited Davis to work environments with only moderate noise levels to account for migraines. Tr. 77. He explained the migraines were treated conservatively with medication and remained "fairly well controlled with the medication regimen."

---

the extent she may be challenging the ALJ's evaluation of her subjective complaints, any argument on that issue is waived for lack of development. *See* Doc. 17 (scheduling order explaining that "[t]he Court will consider abandoned any issue the plaintiff fails to raise or fully brief [i.e., provide more than just a summary contention] unless the interests of justice require its consideration"). Regardless, the ALJ's discussion of the evidence, summarized above, adequately identified the evidence he found "not entirely consistent" with Davis's statements about her symptoms. Tr. 74 (quoted).

Tr. 77. Substantial evidence supports this finding: Davis reported improvement with medication; she often reported having no headaches at all; and she declined to pursue additional medication and Botox options in July 2018, with no evidence of migraines after that. Tr. 495, 507, 529, 534, 578–79, 582.

As to the effects of Davis's anemia, the ALJ explicitly found her anemia caused "no significant functional limitation." Tr. 77. The ALJ accurately stated she was successfully treated with a hysterectomy and iron supplementation without further medical intervention. Tr. 75, 77; *see also* Tr. 630 (supporting medical record). Davis points to no evidence showing her anemia resulted in limitations greater than those in the RFC.

Regarding Davis's affective disorders, the ALJ also considered Davis's reported hallucinations, observing, "While there is evidence of intermittent hallucinations and paranoia, her symptoms are treated conservatively with psychotropic medications, although an additional medication has recently been discussed. Nevertheless, [she] has not required inpatient psychiatric hospitalization … and her symptom control remains under conservative treatment." Tr. 77. To account for any effect Davis's mental symptoms would have on work performance, the ALJ limited her to "simple, routine tasks and simple work-related decisions with occasional interaction with the public and few changes in a routine work setting" and found she would be off task five minutes an hour. Tr. 77–78. His findings are supported by substantial evidence: medical records that Davis was stable on medication, Tr. 775, and her own report that medication stopped the hallucinations, Tr. 790.

Davis lastly argues, "The ALJ posed a hypothetical question to the [vocational expert] that assumed 20% off task, but his unfavorable decision

9

does not explain why that reasonable additional limiting factor was not included in the resulting final RFC." Doc. 22 at 22. The ALJ was not required to explain why he included no limitation for being off task 20 percent of the time; he was required only to clearly articulate the reasons for his findings—supported by substantial evidence—which he did, as explained. And any error would be harmless because the hypothetical was more limiting than the RFC.

Davis's largely normal medical findings; full strength and range of motion; successful physical therapy; successful treatment for headaches, hallucinations, and bleeding; absence of depression; and general stability with medication is such relevant evidence as a reasonable mind might accept as adequate to support the RFC finding. Because the RFC finding is supported by substantial evidence, the ALJ properly relied on the vocational expert's testimony.

## VI. Conclusion

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Kathleen Davis and close the file.

**Ordered** in Jacksonville, Florida, on March 31, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*